UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LEONARD RANDOLPH,

                Plaintiff,

    v.

THOMAS R. GRIFFIN, THOMAS E. HANNAH,
MICHAEL V. ROBYCK, JAMIE M. ROBINSON,
CHARLES M. SULLIVAN, JOSHUA G. BRIMMER,
DONALD C. McINTOSH, WILLIAM F. SKELLY,
JEREMY M. CLEMENT, SABRINA A. VonHAGAN,
and JAMES GILBERT,

                Defendants.

**DECISION AND ORDER**
12-CV-745S

## I. INTRODUCTION

In this action, pro se Plaintiff Leonard Randolph alleges pursuant to 42 U.S.C. § 1983[1] that Defendants violated his constitutional and statutory rights by prohibiting him from freely exercising his religion, subjecting him to excessive force, denying him medical care, and preventing him from accessing the courts.

Plaintiff commenced this action on August 7, 2012, by filing a complaint in the United States District Court for the Western District of New York. (Docket No. 1.) Because the court granted Plaintiff *in forma pauperis* status, it screened his complaint as required under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) and directed service. (Docket No. 4.) Before service, however, Plaintiff filed an amended complaint on August 28, 2012 (Docket

---

[1]Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).

No. 5), which the court also screened and directed service.  (Docket No. 7.)

On December 11, 2012, Defendants filed a Motion to Dismiss Plaintiff's amended complaint for failure to state a claim and for lack of subject-matter jurisdiction.  (Docket No. 26.)  Plaintiff subsequently filed several motions to amend his complaint (Docket Nos. 28, 37, 40) but did not file his proposed amended complaint until after Defendants had already responded to his last motion to amend.  (See Docket Nos. 46, 51.)  Thereafter, Plaintiff filed a Motion to Release Parties (Docket No. 53), in which he voluntarily dismisses Defendants Charles M. Sullivan and Joshua G. Brimmer from this action, and a Motion to Clarify certain of Defendants' opposition papers (Docket No. 48).  Finally, on January 30, 2014, Plaintiff filed a Motion for Preliminary Injunction and Temporary Restraining Order. (Docket No. 55.)

As an initial matter, this Court will grant Plaintiff's Motion to Amend his Complaint (Docket No. 40) and his Motion to Release Parties (Docket No. 53).  District courts have broad discretion to grant a party leave to amend its pleadings and the federal rules dictate that courts "freely give leave when justice so requires."  Fed. R. Civ. P. 15 (a)(2); see also Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003).

Given the procedural posture of this case, this Court finds it most expedient and in the interests of judicial economy to permit Plaintiff to amend his complaint as proposed (Docket No. 51) and assess Defendants' Motion to Dismiss as against that pleading. Consequently, Plaintiff's Motions to Amend (Docket No. 40) and to Release Parties (Docket No. 53) will be granted and the Clerk of Court will be directed to file Plaintiff's proposed amended complaint (Docket No. 51) as the second amended complaint and

2

terminate Charles M. Sullivan and Joshua G. Brimmer as defendants in this case.  Further, Plaintiff's Motion to Clarify (Docket No. 48), in which he seeks clarification of Defendants' opposition to his Motion to Amend, will be denied as moot.

The remaining motions — Defendants' Motion to Dismiss (Docket No. 26) and Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Docket No. 55) — are resolved below.

## II.  FACTS

The following facts, which are alleged in what will be filed as the second amended complaint, are assumed true for purposes of Defendants' Motion to Dismiss.

Plaintiff was incarcerated at all times relevant at the Southport Correctional Facility as an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  (Docket No. 51, p. 1).  But for DOCCS Superintendent Thomas R. Griffin and nurse Jeremy M. Clement, all of the defendants are corrections officers at Southport.  (Docket No. 51, pp. 3-5.)  Each defendant is sued solely in his individual capacity.  (Docket No. 51, pp. 3-5.)

In the chronology of events alleged in Plaintiff's second amended complaint, the claim he asserts last allegedly happened first.  In his sixth claim, Plaintiff alleges that Defendant Gilbert violated his right to freely exercise his religion.  (Docket No. 51, p. 21.) Specifically, Plaintiff alleges that on December 28, 2011, Gilbert stopped and frisked him on his way to the yard and discovered that he had both a yarmulke and a winter hat. (Docket No. 51, p. 22.)  Gilbert informed Plaintiff that he could not bring both to the yard. (Docket No. 51, p. 22.)  Gilbert therefore returned Plaintiff to his cell and directed him to remove his yarmulke while inside, because it was considered "double clothing" since he

3

also had the winter hat.  (Docket No. 51, p. 22.)  When Plaintiff sought clarification of the facility's policies, Gilbert threatened to enter Plaintiff's cell and flush both his yarmulke and winter hat down the toilet.  (Docket No. 51, p. 22.)  Gilbert then ordered Plaintiff to turn over his yarmulke, which Plaintiff did.  (Docket No. 51, p. 22.)  Despite multiple subsequent inquiries, Plaintiff's yarmulke was never returned to him.  (Docket No. 51, p. 22.)

Approximately three weeks later, Plaintiff was allegedly involved in an altercation with Gilbert and other officers that Plaintiff maintains was related to the previous dispute he had with Gilbert concerning his yarmulke.

In his first claim, Plaintiff alleges that on January 17, 2012, Defendants Robyck, Robinson, Sullivan, Brimmer, McIntosh, Skelly, and Gilbert applied excessive force against him.  (Docket No. 51, p. 8.)  Specifically, Plaintiff alleges that Defendants Robyck, Robinson, and Gilbert assaulted him in his cell after placing him in handcuffs.  (Docket No. 51, p. 8.)  According to Plaintiff, Defendant Robyck grabbed him by his collar and pushed him into his cell and punched him on the left side of his face.  (Docket No. 51, pp. 8, 10.)  Defendant Robinson then kicked and punched Plaintiff in his body and face, while Defendant Gilbert struck Plaintiff in the right ankle with his baton.  (Docket No. 51, p. 10.)  Plaintiff further alleges that Defendants McIntosh, Sullivan, Brimmer, and Skelly also inflicted blows on him, as Plaintiff attempted to gain cover under his bed.  (Docket No. 51, p. 10.)  Plaintiff alleges that this attack occurred "as a result of conflict between plaintiff, Gilbert and officer's [sic] prior to January 17, 2012, where J. Gilbert attempted to prohibit plaintiff from wearing his "yarmulke" and winter hat to the yard, thereby hindered [sic] his practice under Judaism Law."  (Docket No. 51, pp. 10, 11.)

In his second claim, Plaintiff asserts that Defendant Hannah failed to intervene to

4

stop the application of excessive force described above.  (Docket No. 51, pp. 8-9.) Specifically, Plaintiff alleges that Defendant Hannah witnessed the use of excessive force but let it proceed for several minutes before stopping it.  (Docket No. 51, pp. 8-9.)

In his third claim, Plaintiff alleges that, shortly after the assault, Defendant Superintendent Griffin entered the cell block and spoke to Defendant Hannah.  (Docket No. 51, p. 13.)  Plaintiff maintains that he tried to attract Griffin's attention but Griffin avoided him, because Griffin had learned from Hannah that Plaintiff had just been assaulted. (Docket No. 51, p. 13.)  Plaintiff alleges that Griffin demonstrated "dereliction of [his] duty" to provide a safe environment, which led to the application of excessive force and he failed to "enforce policy mandating the free exercise of religious practice." (Docket No. 51, p. 13.)

In his fourth claim, Plaintiff asserts that Defendant Clement exhibited deliberate indifference to his serious medical needs when, after the assault alleged in the first claim, Clement (1) intentionally failed to document all of Plaintiff's injuries; (2) denied Plaintiff pain medication and medication to reduce swelling; (3) failed to schedule an x-ray examination; and (4) left Plaintiff to suffer without medication for nearly two weeks, until a different nurse addressed Plaintiff's injuries and gave him medications.  (Docket No. 51, pp. 15-16.)

In his fifth claim, Plaintiff alleges that about one month after the assault, on February 21, 2012, Defendant VonHagan, who was an Inmate Grievance Program Supervisor, denied him access to the courts by discarding his appeal of the denial of his grievance relating to the January 20, 2012 assault and instead submitting a blank appeal in its place. (Docket No. 51, p. 17.)  According to Plaintiff, Defendant VonHagan purposely discarded his appeal to prevent him from exhausting his administrative remedies for purposes of filing a federal court action, in violation of his right to access the courts.  (Docket No. 51, pp. 18-

5

20.)

### III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Since Plaintiff is proceeding pro se, this Court has considered his submissions and arguments accordingly.

This Court construes Plaintiff's sixth cause of action to raise a First Amendment free-exercise claim and a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq.  Plaintiff's first, second, and third causes of action raise excessive-force, deliberate-indifference (failure-to-intervene), and failure-to-protect claims under the Eighth and Fourteenth Amendments.  Plaintiff's fourth cause of action raises a deliberate-indifference claim under the Eighth Amendment.  And Plaintiff's fifth cause of action raises an access-to-courts claim under the First Amendment.

Defendants move to dismiss Plaintiff's third, fifth, and sixth causes of action, each on the basis that Plaintiff has failed to state a claim upon which relief can be granted or for insufficient pleading.[2]

---

[2]In addition, Defendants argue that each of Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment and should therefore be dismissed.  In the second amended complaint, however, Plaintiff makes clear that his claims are brought against Defendants solely in their individual capacities.  (Docket No. 51, pp. 3-5.)

**A.      Defendants' Motion to Dismiss**

**1.      Motion to Dismiss Standard**

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  FED. R. CIV. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  Goldstein, 516 F.3d at 56; ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)  ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1945 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S.Ct. at 1949.  The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  Id. at 1950; FED. R. CIV. P. 8(a)(2).  Well-

pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 129 S.Ct. at 1950. First, statements that are not entitled to the presumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away. See Iqbal, 129 S.Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

In the context of pro se actions, the United States Supreme Court has rejected the idea that the plausibility standard requires amplification with factual allegations to render the claim plausible. See Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). In Erickson, the Supreme Court reversed the "dismissal of a prisoner's Eighth Amendment claim, holding that the court of appeals had 'depart[ed] from the liberal pleading standards' of Rule 8(a)." Boykin v. KeyCorp, 521 F.3d at 214 (2d Cir. 2008) (quoting Erickson, 127 S.Ct. at 2200). Although the Court did not clarify when the plausibility standard requires factual amplification, it noted that "a *pro se* complaint however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

by lawyers." <u>Erickson</u>, 127 S.Ct. at 2200 (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed2d 251 (1976)).

### 2.    Plaintiff's Sixth Claim

In his sixth claim, Plaintiff alleges that Defendant Gilbert violated his right to freely exercise his religion when he refused to allow him to bring his yarmulke to the yard and then permanently confiscated it.  (Docket No. 51, pp. 21-22.)

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." <u>Ford v. McGinnis</u>, 352 F.3d 582, 588 (2d Cir. 2003) (citing <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974)).  To state a free-exercise claim, a plaintiff must "show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.[3]  The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct."  <u>Salahuddin v. Goord</u>, 467 F.3d 263, 274-755 (2d Cir. 2006).  A substantial burden is one that "pressures [an inmate] to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith." <u>Brown v. Graham</u>, No. 9:07-CV-1353**,** 2010 WL 6428251, at *15 (N.D.N.Y. Mar. 30, 2010).

Construing Plaintiff's second amended complaint liberally, his free-exercise claim is that Gilbert infringed his right to practice his religion by ordering him to remove his

---

[3] "The extent of the burden that must be shown" under the First Amendment, "is a matter of some uncertainty within this Circuit." <u>Thomas v. Connolly</u>, No. 10 CIV. 2401 PAC MHD, 2012 WL 3776698, at 11 (S.D.N.Y. Apr. 10, 2012) (Report and Recommendation), *accepted by* 2012 WL 3758457 (S.D.N.Y. Aug. 30, 2012). But like the Second Circuit in <u>Ford v. McGinnis</u>, 352 F.3d 582, 591–92 (2d Cir. 2003), this Court will apply the substantial-burden test in the absence of briefing as to its continuing viability. <u>See</u> <u>Holland v. Goord</u>, No. 05-CV-6295 MAT, 2013 WL 3049220, at *11 n. 4 (W.D.N.Y. June 17, 2013) (assuming substantial-burden test applies to free-exercise claim).

yarmulke indoors (including in his cell) and then permanently confiscating it from him. These allegations are sufficient to state a free-exercise claim under the First Amendment. See Balabin v. Scully, 606 F. Supp. 176, 180 (S.D.N.Y. 1985) (denying motion to dismiss where plaintiff claimed that prison official confiscated his yarmulke).

Plaintiff also bring this claim under the RLUIPA, which prohibits the government from imposing a substantial burden on a prisoner's religious practices unless the burden is the least restrictive means of furthering a compelling government interest. 42 U.S.C. § 2000cc-1(a). But here, Plaintiff seeks only money damages from Defendants in their individual capacities, which are unavailable under the RLUIPA. See Casey v. Pallito, No. 5:12-cv-284, 2013 WL 6673623, at *18 (D.Vt. Dec. 18, 2013); Vega v. Rell, No. 3:09-CV-737 (VLB), 2013 WL 6273283, at *6 (D.Conn. Dec. 4, 2013); Jean-Laurent v. Lawrence, No. 12 Civ. 1502(JPO)(SN), 2013 WL 1129813, *7 n.9 (S.D.N.Y. Mar. 19, 2013); Jouvert v. New York, No. 10-CV-930 (MAD/CFH), 2012 WL 6964386, at *5 (N.D.N.Y. Oct. 23, 2012). Consequently, Plaintiff's RLUIPA claim will be dismissed.

### 3.    Plaintiff's Third Claim

In his third claim, Plaintiff alleges that, shortly after the assault, Defendant Superintendent Griffin entered his cell block and learned from Defendant Hannah that Plaintiff had just been assaulted by corrections officers. (Docket No. 51, p. 13.) Griffin then ignored Plaintiff as he tried to get his attention to discuss the assault. Plaintiff also alleges that Griffin demonstrated "dereliction of [his] duty" to provide a safe environment, which led to the application of excessive force and he failed to "enforce policy mandating the free exercise of religious practice." (Docket No. 51, p. 13.)

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 11 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991) (quoting U.S. CONST. amend. VIII).  "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs — *e.g.,* food, clothing, shelter, medical care, and reasonable safety — it transgresses the substantive limits on state action set by the Eighth Amendment . . . ." Helling v. McKinney, 509 U.S. 25, 32, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993) (quoting DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (1989)).

Among other things, the Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-527, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)).  To state a failure-to-protect claim under § 1983, the plaintiff must establish two conditions:  "First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed [the] sufficient culpable intent" of deliberate indifference. Hayes v. New York City Dep't of Corrs., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer, 511 U.S. at 837).  The test for deliberate indifference is twofold: the official must have knowledge that an inmate faces a substantial risk of harm, or be aware of facts

11

from which he has drawn such an inference, and disregards the risk by failing to take measures to abate the harm.  See Farmer, 511 U.S. at 847; Hayes, 84 F.3d at 620; Warren v. Goord, 476 F.Supp.2d 407 (S.D.N.Y. 2007).

Moreover, to recover damages against supervisory officials for the acts of their subordinates, a plaintiff must show that the defendant's personal involvement caused the constitutional deprivation.  Westbrook v. City Univ. of New York, 591 F. Supp. 2d 207, 224 (E.D.N.Y. 2008) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)); see also Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999) (explaining that because section 1983 imposes liability only on officials who cause a constitutional violation, the doctrine of respondeat superior does not apply); Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002) (holding that a plaintiff must show an affirmative causal link between grossly negligent supervision and constitutional violation).

Personal involvement need not be active participation.  It can be found "when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act."  See Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989).

Thus, personal involvement can be established by showing that

(1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that constitutional acts were occurring.

Liner v. Goord, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003).

Plaintiff has sufficiently alleged a failure-to-protect claim against Defendant Griffin and that Griffin was personally involved in the deprivation of his constitutional rights. Plaintiff alleges that Hannah told Griffin about the attack shortly after it occurred and Griffin then not only ignored Plaintiff's attempts to get his attention, but also failed to remedy the wrong and address the use of excessive force.  In this sense, Griffin had direct knowledge of the use of excessive force by corrections officers yet did nothing to remedy the situation or abate the harm.  Plaintiff also alleges that Griffin failed to enforce the institution's free-exercise policies, which resulted in Plaintiff being subjected to unconstitutional practices. Accordingly, reading the second amended complaint liberally, Defendants' request to dismiss Plaintiff's third cause of action must be denied.

### 4.    Plaintiff's Fifth Claim

In his fifth claim, Plaintiff alleges that Defendant VonHagan denied him access to the courts by discarding his appeal of the denial of his grievance relating to the January 20, 2012 assault and instead submitting a blank appeal in its place.  (Docket No. 51, p. 17.) Plaintiff alleges that VonHagan purposely discarded his appeal to prevent him from exhausting his administrative remedies for purposes of filing a federal court action. (Docket No. 51, pp. 18-20.)

Prisoners have a First Amendment right to "adequate, effective, and meaningful" access to the courts.  Bounds v. Smith, 430 U.S. 817, 821-22, 97 S.Ct. 1491, 52 L.Ed.2d

72 (1977).  To state a denial-of-access-to-courts claim, a prisoner must plausibly allege that the defendant hindered his efforts to pursue a non-frivolous legal claim.  Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).  Thus, "a [prisoner] must show that he has suffered an actual injury traceable to the challenged conduct of prison officials."   Gomez v. Sepiol, No. 11-CV-1017SR, 2014 WL 1575872, at *10 (W.D.N.Y. Apr. 11, 2014).

Although Plaintiff alleges that VonHagan discarded his grievance appeal, he fails to plausibly allege that VonHagan's conduct hindered his efforts to pursue his legal claims. Indeed, Plaintiff's claims are presently before this Court in Plaintiff's second amended complaint.  Therefore, in the absence of allegations of actual injury, Plaintiff's fifth claim will be dismissed and VonHagan will be terminated as a defendant in this action.

**B.      Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order**

On January 30, 2014, Plaintiff filed a motion entitled "Order to Show Cause for Preliminary Injunction and a Temporary Restraining Order" (Docket No. 55), requesting that Defendants be enjoined from fabricating misbehavior reports and retaliating against Plaintiff for his filing of this lawsuit.  Plaintiff's motion is premised on several incidents that do not relate to the claims in this case.  For example, Plaintiff complains of cell transfers, false misbehavior reports involving threats to throw feces, verbal harassment, a cell search, a strip search, denial of grievances, and implementation of deprivation orders. (Docket No. 55.)  Again, none of these alleged incidents involve the allegations set forth in the second amended complaint.

Injunctive relief is designed "to preserve the status quo and prevent irreparable harm

14

until the court has an opportunity to rule on the lawsuit's merits." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).  For that reason, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint.  See Nicholson v. Murphy, No. 3: 02-CV-1815 (MRK); 2003 WL 22909876, at *3 (D.Conn. Sept. 19, 2003).

Here, Plaintiff's motion for injunctive relief does not concern the allegations in the second amended complaint.  Thus, it "has nothing to do with preserving [this Court's] decision-making power over the merits of [his] lawsuit." Devose, 42 F.3d at 471; Williams v. New York State Office of Mental Health, No. 10-CV-1022 (SLT)(JO), 2011 WL 6012418, at *1 (E.D.N.Y. Dec. 1, 2011).  Consequently, no injunctive relief is warranted and Plaintiff's motion will be denied.  See Devose, 42 F.3d at 471 (denying inmate's motion for preliminary injunction when the inmate's complaint alleged denial of adequate medical treatment and his motion for preliminary injunction sought relief for alleged retaliation based on filing the instant lawsuit); Toliver v. Colvin, No. 12-CV-00227A(F), 2014 WL 1660609, at *6 (W.D.N.Y. Apr. 24, 2014) (denying injunctive relief "because the requested relief does not relate to any of the allegations of the underlying Amended Complaint") (citing McAllister v. Goord, No. 9:06-CV-0442(TJM)(RFT), 2009 WL 5216953, at *2 (N.D.N.Y. Dec. 30, 2009) ("the relief that a plaintiff seeks by way of injunction must relate to the allegations contained in the underlying complaint"); McKinnon v. Tresman, No. 3:02-CV-2305(WWE)(HBF), 2004 WL 78091, at *1 (D.Conn. Jan. 9, 2004) ("To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint.").

15

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend is granted and Plaintiff's proposed amended complaint will be filed as the second amended complaint in this action. Plaintiff's Motion to Release Parties is also granted and Defendants Charles M. Sullivan and Joshua G. Brimmer will be terminated as defendants.  Plaintiff's Motion to Clarify is denied as moot.  Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiff's RLUIPA claim and his claim against Defendant Sabrina A. VonHagan are dismissed and VonHagan will be terminated as a defendant.  Finally, Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion to Amend (Docket No. 40) is GRANTED.

FURTHER, that the Clerk of Court is DIRECTED to file Plaintiff's Proposed Amended Complaint (Docket No. 51) as the Second Amended Complaint.

FURTHER, that Plaintiff's Motion to Release Parties (Docket No. 53) is GRANTED.

FURTHER, that the Clerk of Court is DIRECTED to terminate Defendants Charles M. Sullivan and Joshua G. Brimmer as defendants in this case.

FURTHER, that Plaintiff's Motion to Clarify (Docket No. 48) is DENIED AS MOOT.

FURTHER, that Defendants' Motion to Dismiss (Docket No. 26) is GRANTED in part and DENIED in part.

FURTHER, that the Clerk of Court is DIRECTED to terminate Sabrina A. VonHagan

16

as a defendant in this case.

FURTHER, that Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Docket No. 55) is DENIED.

SO ORDERED.

Dated:      July 16, 2014
            Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court